**John B. TIPPO**

v.

**COMMANDING OFFICER, Commander Thomas M. Volatile Armed Forces Examining & Entrance Station.**

**Civ. A. No. 70–3546.**

United States District Court,
E. D. Pennsylvania.

March 29, 1971.

E. M. Kopanski, Needleman, Needleman, Tabb & Eisman, Philadelphia, Pa., for petitioner.

L. C. Bechtle, U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Petitioner submitted to induction into the Army on December 30, 1970, and now asks that we grant a writ of habeas corpus and order his discharge from the armed forces. Petitioner raises two grounds in support of his petition, namely, (1) that his local draft board failed to state any reasons for denial of his conscientious objector claim and that such denial is without a basis in fact and (2) that his local draft board was illegally constituted in that two of its five members were not residents of the area encompassed by his local board at the time he was classified.

An evidentiary hearing has been held and the issues have been thoroughly briefed and argued. Petitioner's selective service file discloses the following material facts:

Petitioner was first ordered to report for induction into the Army on April 14, 1969. Previously, he had been granted 2–S student deferments while he attended Missouri Valley College pursuing an undergraduate degree in sociology. On April 16, 1969, the local board, at petitioner's request, cancelled the outstanding order to report and reclassified him 1–S(C) to permit him to complete his last semester of college. On November 18, 1969, after the expiration of the college semester, petitioner was again classified 1A by the board. On December 11, 1969, petitioner acknowledged receipt of his new classification by letter and requested the Board to grant him a personal appearance on the ground that he was a conscientious objector. In the same letter, he requested the Board to send him the necessary SSS–150 conscientious objector form. The Board mailed petitioner the requested SSS–150 form on December 15, 1969. However, the completed form was not returned to the Board. No personal appearance was had at this time.

In February of 1970, petitioner advised the Board of his enrollment in graduate school at the University of Delaware as a candidate for a master's degree in speech. He advised that he planned to graduate in June, 1971.

On March 16, 1970, petitioner received his second order to report for induction. The induction date was scheduled for April 2, 1970. Petitioner, again by let-

ter, acknowledged receipt of his orders and renewed his request for a personal appearance on his conscientious objector claim. He explained that he discarded the first form SSS–150 sent to him by the Board because he became confused about the religious aspects in the form. He requested a second SSS–150 form and stated, "I am a conscientious objector and I now realize that I can apply".

Petitioner's file was forwarded to the Delaware State Selective Service headquarters which advised the local board to cancel the outstanding induction orders and to consider petitioner's conscientious objector claim after a personal appearance. The orders were cancelled on March 25, 1970.

Petitioner thereafter submitted a completed form SSS–150 along with several letters in support of his conscientious objector petition which attested to the strength of his beliefs. The completed form SSS–150 along with the accompanying letters and additional letters furnished by petitioner, make out a prima facie case for conscientious objector classification[1]. On May 12, 1970, petitioner personally appeared before the Board and after meeting with him, the Board, on the same day, classified petitioner, by a vote of 3–0, 1A. The Board stated no reasons for denial of petitioner's conscientious objector claim. On August 10, 1970, the State Appeal Board affirmed and continued petitioner's 1A classification.

After this appeal was denied, petitioner, on September 1, 1970, enrolled for another semester of graduate study at the University of Delaware. He also signed a contract with the school as a graduate assistant. The local board was not advised of this fact until September 25, 1970. This was after petitioner had been ordered to report for induction for the third time. (September 18, 1970). Petitioner requested cancellation of this induction order. The State Director, although not unhesitatingly, granted petitioner's latest request and postponed the scheduled induction until December 30, 1970, to allow petitioner to finish the school semester he had already started[2]. On December 30, 1970, petitioner presented himself at the induction station and submitted to induction, and at the same time, his attorney filed a petition for a temporary restraining order and writ of habeas corpus, which is presently before the Court.

The Government has stipulated to the fact that two of the five members of petitioner's local draft board, Local Board No. 5 of Wilmington, Delaware, are residents of the *county*, but not of the *area* in which the local board is located.

Petitioner contends, relying on Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970) and United States v. Broyles, 423 F.2d 1299 (4th Cir. 1970), that his classification which resulted in his reporting for induction was invalid because his local board failed to state its reasons for denying his conscientious objector claim. Petitioner contends that the Board's failure to disclose its reasons denied him the right to an effective administrative appeal.

1. We shall not go into a complete analysis of what constitutes a prima facie case or of all the statements contained in petitioner's form SSS–150 and the accompanying letters. It is sufficient for our purposes to note that we have reviewed petitioner's file and find that a prima facie case of conscientious objector status has been stated in accordance with the Supreme Court's definitions. See United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); Gillette v. Unit-

ed States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168, decided March 8, 1971.

2. The State Director, we note, was under no obligation to grant petitioner's latest request since graduate deferments had since been eliminated by executive order of the President.
   It was only after consultation with the Chairman of the University of Delaware Graduate School that he felt that everyone's best interests could be served by allowing petitioner to complete his semester.

The Government, on the other hand, contends first that petitioner's classification does not fall within the purview of *Scott* because (1) *Scott* is factually distinguishable from the instant case in that *Scott* dealt with a post-induction order—"crystallization" [3] and (2) in *Scott* there was nothing in the petitioner's selective service file to cast doubt upon his sincerity, whereas here petitioner's file on its face demonstrates adequate bases in fact concerning sincerity to support the local board's action.

Additionally, the Government contends that the *Scott* case should not be retroactively applied to an administrative proceeding which took place a full four months prior to the time it was publicly announced.

The arguments advanced by the Government are not unappealing to this Court. However, it appears that they have been rendered academic by the Third Circuit's most recent expression in United States v. Speicher, 439 F.2d 104 (3rd Cir. March 11, 1971) [4].

In *Speicher*, a pre-induction order case, the defendant appealed a judgment of conviction for refusing to submit to induction into the armed forces, contending that his order to report for induction was invalid because his local board did not state its reasons for rejecting his conscientious objector claim. There, the Government argued, as here, that *Scott* should be limited to its particular facts. The Court, however, did not choose to adopt the Government's position. The Court noted that in *Scott* the *general rule* was adopted that "where the Selective Service System gives no reasons for its rejection of a prima facie conscientious objector claim, the resulting induction order is invalid". *Speicher, supra,* 439 F.2d at p. 107. The Court then noted that:

"The case is controlled by *Scott* unless we accept the Government's contention that the *Scott* holding should be restricted to those cases in which the Local Board, by refusing to reopen when presented with a prima facie claim for reclassification, deprives the registrant of the right to administrative review (citation omitted). So to read *Scott*, however, ignores the reasoning of that decision and of the primary case on which it relied." *Speicher, supra,* p. 107.

The critical point stressed in *Speicher* is that a local board's statement of reasons for denying a conscientious objector claim is not only necessary for adequate judicial review, but it is also essential to meaningful administrative review by non-judicial appeal boards. "The Appeal Boards are no more entitled to speculate as to the basis for Local Board action than are reviewing courts". Id. at p. 108. The broader powers and scope of review enjoyed by administrative appeal boards may be utilized to effect a result based upon factors which may be unknown to a reviewing court. Moreover, the registrant's right to give the appeal board a written statement outlining the local board's alleged errors becomes seriously diluted, if not meaningless, where he is never informed of the basis for the local board's action.

In *Speicher*, the Court did intimate, however, that the requirements of *Scott* might be satisfied by an appeal board's statement of reasons where the

---

3. We agree with the Government's argument that the instant case does not present a post-induction order situation akin to that faced by the local board in *Scott*. Here, it is clear from petitioner's selective service file that the local board cancelled petitioner's outstanding order to report for induction after it received his renewed request for a conscientious objector classification. The local board did

not get involved in the perplexing problem of post-induction order "crystallization", but rather reopened petitioner's file, heard evidence, and decided the claim on its merits. In this respect, the instant case is factually distinguishable from *Scott*.

4. It should be noted that *Speicher* was handed down after the instant case was briefed and argued.

local board had stated none [5]. The instant case, however, does not present such a situation. The *Speicher* holding is, therefore, clear:

> "Our holding is that in post-1967 cases, when neither the Local Board nor the Appeal Board states its reasons for denying a conscientious objector claim, the induction order is invalid" [6]. *Id.* at p. 108.

▆▆▆ Assuming in the instant habeas corpus proceeding that it would have been proper to have the members of Local Board No. 5 testify to their reasons for denying petitioner's conscientious objector claim [7], we note that the members of the local board were present in the courtroom at the hearing and were not called by the respondents. In accordance with *Scott* and *Speicher*, we have no choice but to hold that petitioner's induction order was invalid and to issue the writ of habeas corpus [8]. The foregoing constitutes our findings of fact and conclusions of law. Fed.R.Civ.P. 52.

5. We do not suggest that in the instant case there may not reasonably be bases in fact for denial of petitioner's claim. Our review of the selective service file indicates there may well be inconsistencies which might, if articulated by the local board, be grounds for denial of conscientious objector status. However, petitioner should be given the first opportunity to challenge the local board's actions administratively after he knows why his claim was denied. Once reasons have been articulated by the local board, petitioner may effectively specify why he believes the local board erred.

6. This statement of the Court's holding in *Speicher*, we believe, disposes of the Government's argument on the retroactive application of *Scott*. The Court has recently become aware of a later decision of the Third Circuit handed down March 19, 1971, United States v. Crownfield, 439 F.2d 839, (3rd Cir. filed March 19, 1971). In *Crownfield* the Court addressed itself specifically to the retroactivity issue and held that *Scott* applies retroactively at least to direct appeals in criminal cases where the classifications were made prior to the date *Scott* was decided. The Court expressed no opinion on the application of *Scott* in collateral proceedings where the classifications also were made prior to the date of *Scott*. This is understandable since that particular issue was not before the Court.

The Court, however, did specifically note that the rule in *Scott* clearly favored retroactivity since it related directly to the very essence of both judicial and administrative review. *Crownfield, supra,* 439 F.2d at 842. The Court stated that "[i]t would be difficult to imagine a rule whose purpose more clearly demanded retroactivity than this one". *Id.*

Furthermore, the Court also specifically noted that other circuits adopting a rule similar to *Scott* have applied that rule in subsequent decisions without discussion. *Crownfield, supra,* at p. 842. See e. g. United States v. French, 429 F.2d 391 (9th Cir. 1970); United States v. Deere, 428 F.2d 1119 (2d Cir. 1970); United States v. Simpson, 426 F.2d 286 (4th Cir. 1970). Considering these indications, and the lesser significance of administrative difficulties when a rule points so clearly toward retroactivity as this one, we are of the opinion that it should so apply in the instant case. It seems incredulous to this Court that a Selective Service registrant must suffer a criminal conviction and sentence before he may seek to discredit and invalidate the inarticulated denial of his conscientious objector claim.

7. See Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970); United States v. Deere, 428 F.2d 1119 (2d Cir. 1970); but see Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970); *Cf.* United States v. Speicher, *supra.*

8. Considering our disposition of the first issue raised, we need not consider the question of whether Local Board No. 5 was illegally constituted.