**Buford Darryl QUAID, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 9497.**

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1967.

Rehearing Denied Jan. 18, 1968.

Charles C. Yon, Oklahoma City, Okl., for appellant.

David A. Kline, First Asst. U. S. Atty., Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., with him on the brief), for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge,* and BREITENSTEIN and SETH, Circuit Judges.

WILBUR K. MILLER, Senior Circuit Judge:

On January 24, 1967, the appellant, Buford Darryl Quaid, was indicted for refusing to submit to induction into the armed forces. On March 13 a jury found him guilty, and on April 20, he was sentenced to imprisonment for five years. He appeals.

We first summarize the facts. Quaid registered for the draft in 1958 and was classified 1–A, that is, eligible for service. On April 17, 1962, the local draft board received notice that Quaid had enlisted for six years (with six months' active duty) in the Army Reserve and immediately reclassified him as 1–D [1] to reflect that change in status. The appellant completed the required six months of active service and thereafter attended the periodic meetings of his Reserve unit, until some time in 1966 when he joined a religious sect called

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. 50 U.S.C. App. § 456(c) (2) (A) says, in pertinent part:

"Any person * * * who, prior to attaining the age of twenty-six years and prior to the issuance of orders for him to report for induction, enlists or accepts appointment in the Ready Reserve of any reserve component of the Armed Forces * * * shall be deferred from training and service under this Act * * * so long as he serves satisfactorily as a member of an organized unit of such Ready Reserve * * *."

"Jehovah's Witnesses," which teaches opposition to war. He then made some effort, without success, to obtain a discharge from the Ready Reserve because of his conscientious objection to military service; but, despite that failure, stopped attending the Reserve meetings although his enlistment required him to attend them.

On August 22, 1966, the local board received the following certification from appellant's commanding officer:

"All reasonable efforts in accordance with current regulations have failed to induce satisfactory participation. Certified for priority induction under Section 6(c) (2) (E), UMTS Act as amended."

It was not until September 20, however, that the local board, without changing Quaid's classification, mailed to him an order to report for induction October 3, 1966. In the meantime, the appellant had sent to the local board Form 150—a special form for conscientious objectors—which the board received September 9. The form was filled out but was unsigned. The board held the form for 10 days and then, on September 19, returned it to Quaid for signature; but, without waiting for its return, on September 20 mailed to him the order to report for induction to which we have referred.

■ The principal reason for reversal advanced by the appellant is that he was denied due process when he was not officially heard on his informal request to his commanding officer for discharge from the Ready Reserve because of his conscientious objection to war, and was not given a hearing before the commanding officer certified him for priority induction as a delinquent reservist. He also contends that the sentence of five years was cruel and unusual punishment in violation of the Eighth Amendment to

the Constitution of the United States. In our view, neither of those contentions is meritorious. There is no statutory provision for the hearings Quaid claims he should have had; and the sentence was less than the maximum fixed by statute.

■ There is, however, another aspect of the case which requires discussion: whether the local board erred in failing to consider Quaid's claim of conscientious objection before ordering him to report for induction. If it did, the District Court erred in not remanding the case to the board for such consideration; for this was a plain error or defect affecting Quaid's substantial rights which we may notice although it was not brought to the attention of the District Court. Rule 52(b), FED.R.CR.P.

Before it sent the induction notice on September 20, the local board knew Quaid was claiming the status of a conscientious objector because, as we have said, it had received from him on September 9 his Form 150, which was complete except as to signature. The board knew who had sent it, however, for on September 19 it returned the form to the appellant for signature. Then, without waiting for Quaid to sign and return it, the board on September 20 mailed an order of induction.[2] (The signed form was received by the local board September 22.) Thus, the board was on notice of appellant's claim of conscientious objection before the notice of induction was mailed. This was sufficient, we think, to invoke the processing of Quaid's claim.

Although a claim to be a conscientious objector does not set well with most Americans, particularly because it may so easily be used as a fraudulent device to avoid service in the armed forces, Congress has recognized that the true conscientious objector is entitled to exemption from combatant service. The

2. Mailing the induction order the day after returning the Form 150 for signature tends to indicate the local board was attempting to foreclose the filing of the conscientious objector claim before notice of induction. If this were the board's purpose, it was unsuccessful, as we hold above that the filing of the unsigned Form 150 was sufficient to apprise the board of appellant's claim.

lawmakers provided in 50 U.S.C.App. § 456(j) as follows:

"Nothing contained in this title [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. * * * "

It follows from the emphatic language of the foregoing statutory provision that the local board should have considered and disposed of Quaid's claim before sending him an induction notice, unless, in the circumstances, some other section of the statute overrides § 456(j).

The effect of the Government's argument is that another section of the statute is controlling here, and that in the factual situation of this case, § 456(j) does not apply. The Government contends that, after the appellant had been certified for priority induction by his commanding officer, the local board could not then consider the conscientious objector claim, but was mandatorily required by statute and regulation to order his immediate induction. The statute to which the appellee refers is 50 U.S.C. App. § 456(c) (2) (D), which is in pertinent part as follows:

"Notwithstanding any other provision of this Act [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix], the President, under such rules and regulations as he may prescribe, may provide that any person enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * *may be selected for training and service and inducted into the armed force of which such reserve component is a part, prior to the selection and induction of other persons liable therefor.*" (Emphasis added.)

The pertinent part of the implementing regulation, 32 C.F.R. § 1631.8, to which the appellee refers, is as follows:

"(a) Notwithstanding any other provision of the regulations in this chapter, any registrant enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * of which he becomes a member as certified by the respective armed force, *shall be ordered to report for induction by the local board regardless of the class in which he is classified and without changing his classification.* * * " (Emphasis added.)

We note that the regulation goes beyond the statute by changing the permissive word "may" to the imperative word "shall." That is to say, although § 456(c) (2) (D) provides that, "Notwithstanding any other provision of this Act," the President may provide by regulation that a delinquent reservist "may be selected" for priority induction. But the implementing regulation goes beyond that, and provides that a delinquent reservist "shall be ordered to report for induction * *."

The regulation's substitution of the word "shall" for the statutory word "may" would, if valid, cause an incongruity: it would result in two diametri-

cally opposite provisions. On the one hand, § 456(j) provides that

> "Nothing contained in this title [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * *"

And, on the other hand, § 456(c) (2) (D) and the implementing regulation, read together, provide that "Notwithstanding any other provision of this Act," a delinquent reservist "shall be ordered to report for induction" regardless of and "without changing his classification."

■ In our view, Congress knowingly and advisedly used the word "may" in providing that a delinquent reservist "may be selected" for priority induction; it knew there might be cases in which priority induction would be inappropriate because it would violate the emphatic, imperative provision of § 456(j) that a conscientious objector shall not be required to serve in the armed forces.

■ We hold the regulation invalid insofar as it changes the statutory word "may" to the imperative "shall" and thus requires the priority induction of a delinquent reservist, regardless of another provision of the statute which directs the local board to investigate a conscientious objector claim before ordering induction. With the invalid regulation eliminated, it is seen that there is no conflict between § 456(j) and § 456(c) (2) (D). The use of the permissive "may" in the latter section allows full effect to be given to the requirement of the former section that a true conscientious objector shall be exempt from combatant service.

It may be suggested that, as § 456(j) limits the exemption of a conscientious objector to exemption from "combatant training and service in the armed forces," it does not preclude the priority induction of a delinquent reservist for civilian service, even if he is a conscientious objector. The answer to this suggestion is that § 456(c) (2) (D) does not so limit the induction which may be ordered, and that in this case the local board unqualifiedly ordered immediate induction into the armed forces without limiting it to civilian service.

■ From what has been said, we conclude and hold that the District Court erred in not remanding the case to the local board with instructions to consider and act upon Quaid's claim to be a conscientious objector; that, consequently the court erred in submitting the case to the jury. The conviction will be set aside, and the case will be remanded to the District Court to dismiss the indictment and to direct the local board to proceed in accordance with this opinion.

So ordered.