UNITED STATES of America

v.

Frank William WEAVER.

Crim. No. 71-238.

United States District Court, E. D. Pennsylvania.

Jan. 13, 1972.

Louis C. Bechtle, U. S. Atty., Faith Ryan Whittlesey, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Peter L. Gale, Rosenthal & Patti, Philadelphia, Pa., for defendant.

## OPINION AND ADJUDICATION

JOSEPH S. LORD, III, Chief Judge.

Frank William Weaver was indicted on April 21, 1971 for willfully and knowingly failing to submit to induction into the Armed Forces, in violation of 50 App.U.S.C. § 462. It is not disputed that

defendant intentionally failed to submit to induction as scheduled on November 16, 1970. He seeks to defend this prosecution by proving his induction order invalid, asserting several alleged procedural errors by the local board in the processing of his case which it is claimed constitute a denial of basic procedural fairness and violation of due process of law.

At the outset, we must decide whether we can even consider defendant's challenges to the validity of his induction order.

The significant chronological happenings in this case are:

On July 20, 1970 the local board received Weaver's completed Form 150 applying for conscientious objector status, accompanied by three reference letters from others in support of his application. On August 27, 1970 Weaver was notified that he was classified 1–A, accompanied by notification of his right to appeal that classification and request a personal appearance. No notice of appeal or request for a personal appearance was received by the local board within the 30 day statutory appeal period. 32 C.F.R. § 1626.2(c) (1). On November 2, 1970 Weaver was ordered to report for induction, to take place on November 16, 1970. Four days after receiving this notice, he requested a personal appearance before the local board. This was denied as not being timely, but he was granted a personal interview on November 13, 1970. After the interview, the local board declined to reopen his classification and ordered him to report and submit to induction as scheduled on November 16, 1970.

The defendant argues that his failure to take a timely appeal or request for a personal appearance was justified. We are not persuaded, however, that an appeal of his classification would have been futile, self-defeating, or judicially wasteful. United States v. Deans, 436 F.2d 596 (3rd Cir. 1971); United States v. Zmuda, 423 F.2d 757 (3rd Cir. 1970), cert. denied 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970).

Having decided that Weaver's failure to exhaust administrative remedies was not excusable, we are confronted with the larger question presented by this case. That is whether the exhaustion doctrine should apply at all in a case where a registrant's proposed defense is that his induction order is invalid because the local board procedures in handling his case were so lacking in basic fairness as to deny him due process of law.

■ It is well settled that this claim of a denial of due process is one of two general grounds which may be asserted to avoid conviction for refusal of induction, the other being that the classification has no basis in fact. United States v. Bellmer, 404 F.2d 132 (3rd Cir. 1968). The Court's recent decision in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), clearly precludes judicial consideration of the "no basis in fact" defense where there has been a failure to exhaust administrative remedies. The allowance of a bypass of appeal procedures would be particularly damaging to the Selective Service System in that situation, because the consideration of the factual basis for a conscientious objector claim involving an evaluation of the beliefs and sincerity of the registrant is clearly a matter which Congress intended for administrative expertise.

On the other hand, the Court in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), held that exhaustion of administrative remedies was not necessary when the question of whether a claimed exemption was to be granted or not was solely a matter of statutory interpretation of the Congressional enactment creating the exemption. No appeal to the appeal board was required there because the question of law involved was not really a matter of administrative expertise, such as fact gathering and evaluation.

The Fifth Circuit, in a decision before McKart, expressed doubt that there could be any exceptions to the exhaustion

doctrine. In DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968), a black registrant sought to defend against his criminal prosecution for refusing induction by proving that his local board had violated his due process rights in handling his case, and that due process was violated because blacks were systematically excluded from membership on the local board. The court held that the defendant was barred from presenting these due process claims as a defense to his prosecution because he had failed to exhaust his administrative remedies. Accord, Evans v. United States, 252 F.2d 509 (9th Cir. 1958).

The decision in DuVernay was affirmed by an equally divided Supreme Court [1], without opinions. 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969). Thus, it is an open issue whether the exhaustion doctrine should apply in cases where the registrant claims that his induction order is invalid because local board procedures leading to the order violated the requirements of due process.

In the only case in this Circuit dealing with the applicability of the exhaustion doctrine to a challenge to local board procedural irregularity, the court held that a failure to exhaust administrative remedies precluded the defense that the board was illegally constituted. United States v. Tobias, 447 F.2d 227 (3rd Cir. 1971). The defendant in Tobias challenged the composition of the local board on the ground that only two of the five board members were residents of the area while a Selective Service Regulation provided that where practicable board members should be residents of the area.

In reaching its decision, the court emphasized that Congress had entrusted to the Selective Service System the power to define the jurisdiction and composition of the local boards. The challenge to local board action in Tobias was neither constitutional nor statutory, but emanated solely from a regulation promulgated from within the Selective Service System itself. The court concluded that the composition of the local boards was clearly a matter of administrative expertise calling for the application of the exhaustion doctrine. It carefully limited this holding to the circumstances presented by the record, "where no specific allegation of discrimination, bias, or prejudice has been lodged against the board." Tobias, *supra*, at 229.

■ In this case, defendant's challenge to local board action is of a much more serious nature, clearly presenting allegations of a violation of his constitutional right to due process of law. Unlike Tobias, the defendant here is not concerned with who the board members were, but what they did. His chief claim is that the local board never gave his conscientious objector application adequate consideration. He alleges that it was rejected in a perfunctory manner, considered, if at all, for a number of seconds as one of hundreds of cases which the local board decided at one sitting in an almost rubber stamp assembly line operation.

We have concluded that defendant should not be precluded from presenting these claims to this court as a defense to his prosecution despite the fact that he failed to exhaust administrative remedies.

■ This Circuit has squarely rejected the notion that as long as a registrant receives a fair hearing at the appeal board level, unfair conduct by the local board is irrelevant and will not upset a classification and invalidate an induction order. Appeal boards do not correct every defect in the local board's classification procedures. United States v. Polites, 448 F.2d 1321 (3rd Cir. 1971); Contra, DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965); United States v. Van Hook, 284 F.2d 489 (7th Cir. 1960); United States v. Corliss, 280 F.2d 808 (2nd Cir. 1960).

In Polites, the registrant was granted a personal interview by his local board

---

1. An eight member Court considered and decided the case, as Mr. Justice Fortas did not participate.

after he had requested a III–A hardship deferment. At the interview the board requested further information from the registrant, but then proceeded to classify him 1–A that same day. Three days later the local board received the information it had requested, but never considered it. When the registrant appealed his 1–A classification, the local board sent his entire file to the appeal board, including the new material which it had not considered. The appeal board, after a full and fair consideration of all materials in the file, denied the III–A deferment. The district court convicted Polites for refusing induction, concluding that the appropriate appeal board adjudication nullified the error of the local board in not considering the data in question.

The Court of Appeals reversed, holding that a registrant has a right to have the complete record considered both by his local board and his appeal board.

"* * * [A]n 'underlying concept of the Selective Service System is that those subject to call for service in the armed forces are to be classified by their neighbors—people who are in a position to know best their backgrounds, their situation and activities.' (Citation omitted.) The registrant here was deprived of the opportunity for such local consideration of all relevant materials."

Polites, *supra*, at 1324.

■■ A registrant must be treated in a manner comporting with due process requirements at every level of the administrative system, regardless of whether or not he avails himself of another administrative opportunity. The registrant here has availed himself of an administrative remedy by the timely submission of a conscientious objector application to his local board for its consideration. Compare, Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). This is not a case of deliberate bypass of the entire administrative system. Compare, United States v. Pringle, 438 F.2d 1216 (1st Cir. 1971).

■ It must be kept in mind that it is the government which seeks the court's aid in jailing the defendant. The registrant has not initiated court proceedings seeking some relief he could well obtain from an administrative agency. At the time of trial there is no administrative remedy available to the registrant. If Congress invokes the assistance of the courts for enforcement of the law, then the courts must decide according to the law. We reject the concept that we have criminal jurisdiction and at the same time must ignore the fact that the prosecution is based on administrative action which was allegedly in violation of defendant's constitutional right to due process under law. It is anomalous, and grossly unfair to convict a registrant under an invalid induction order because he has committed a procedural error in failing to effect a timely appeal, while the local board which certainly has a greater familiarity with procedures, has committed an error of a magnitude involving an asserted denial of due process of law.

■ Unlike McGee, where the challenge was that the classification had no basis in fact, the failure to exhaust here did not deny the administrative system an important opportunity to make a factual record and apply its expertise. Whether or not there has been procedural error that amounts to a denial of due process is a question of law addressed to the expertise of a court, not an administrative agency whose job it is simply to follow prescribed procedures and evaluate facts in light of them. cf. Wills v. United States, 384 F.2d 943 (9th Cir. 1967); United States v. Kissinger, 250 F.2d 940 (3rd Cir. 1958); United States v. Branigan, 299 F.Supp. 225 (S.D.N.Y. 1969). We must decide whether the local board error constituted a denial of due process, or was a minor one not creating possible prejudice to the registrant which may have been corrected by proper appeal board procedures, if the registrant had taken a timely appeal. *See* United States v. Polites, *supra*, 448 F.2d at 1325 (dictum); United States v. Stur-

gis, 342 F.2d 328 (3rd Cir. 1965), cert. den. 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed. 2d 120 (1965); United States v. Lawson, 337 F.2d 800 (3rd Cir. 1964), cert. den. 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804 (1965).

It is true that a strict exhaustion requirement tends to ensure that the Selective Service System will have additional opportunities to discover and correct its own errors. McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47, 53 (1971). This interest in time-saving, self-correction agency action is slighted whenever a registrant fails to take a timely appeal from his local board classification. It is always possible that the appeal board would have granted the requested classification, obviating the necessity for any further proceedings. This, of course, was true in the situation presented in the McKart case, but the Court, nevertheless, decided there that other factors on balance dictated that exhaustion should not be required. Both McKart and McGee have recognized that the exhaustion requirement should not be applied "blindly in every case." McKart, 89 S.Ct. 1657, 23 L.Ed.2d 194, 395 U.S. at 201; McGee, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d at 53.

More fundamentally, it is not at all clear why the entire onus for unnecessary court proceedings should be put on the registrant because of his failure to exhaust administrative remedies. It is after all the government, and not the registrant, who has initiated those proceedings. The Selective Service System is not required by law to discover and correct its own errors only when a registrant files a timely appeal from local board action. The local board could review its file on the registrant as a matter of course to check for substantial procedural errors before sending him an induction notice.

██ Likewise, where induction orders have resulted from administrative procedures which are defective, the United States attorneys' office should not indict the registrant. United States v. Spei-

cher, 439 F.2d 104, 109 (3rd Cir. 1971) (dictum). Recently, this Circuit, in reversing a conviction for refusing induction because of procedural errors by the Selective Service System, had cause to comment on the government's role in obviating the need for judicial review.

> "The large majority of those convictions under 50 U.S.C. App. § 462 which have been reversed by this court disclose failures by the Selective Service System to accord procedural safeguards to registrants. At oral argument, we were told by the Assistant United States Attorney for the Middle District of Pennsylvania that his office has established a practice of constant review of pending files to determine whether prosecution is warranted under the circumstances of emerging concepts of selective service law. We recommend such a procedure to all United States Attorneys in this circuit. It is suggested that their offices initiate a reexamination of those cases, both at a pre and post indictment state, for the purpose of determining whether a simple remand to the Selective Service System for additional agency action could not serve to cure procedural deficiencies which might otherwise invalidate subsequent prosecutions. (Footnote omitted)."

United States v. Neamand, 452 F.2d 25 (3rd Cir., Nov. 16, 1971).

We do not think that our decision today will lead to a frequent and intentional flouting of the administrative process. The registrant who is certain that he is conscientiously opposed to all wars is likely to think at the instant that he is denied conscientious objector status that he has a valid challenge to the local board action. Unlike the "no basis in fact" situation, given the procedural intricacies of the Selective Service System, the registrant will often be totally unaware that he has been denied due process of law by local board procedures. Realistically, it is often only the able defense lawyer who brings a due process argument to the registrant's attention at trial. Thus, it is not likely that at the

time of local board classification, many registrants would decide not to appeal but instead wait until a possible trial to assert as a defense that the local board denied them due process of law. Moreover, as the McGee decision recognized, "the fear of 'frequent and deliberate flouting' can easily be overblown, since in the normal case a registrant would be 'foolhardy' indeed to withhold a valid claim from administrative scrutiny." McGee 402 U.S. at 485, 91 S.Ct. at 1569, 29 L.Ed.2d at 53.

Since we have decided that defendant did not have to exhaust administrative remedies in order to be able to assert as a defense to this prosecution that the local board denied him due process of law, we pass to the merits of his claims.

We find that the local board violated due process of law by not giving defendant's conscientious objector claim adequate consideration. Thus, it is not necessary to evaluate the validity of defendant's other claims of instances of board action or inaction which he alleges violated his constitutional rights.

■■■ Fundamental fair play of course requires that the defendant be given an adequate opportunity to have his request for deferment or exemption fairly decided. *See* Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). It obviously violates due process if a timely filed conscientious objector claim is not considered at all by a local board. Quaid v. United States, 386 F.2d 25 (10th Cir. 1967).

■■■ Initially, to prevail on such a claim of inadequate consideration, the defendant has the burden of producing evidence to rebut the legal presumption that the local board properly performed its duties with respect to official proceedings. United States v. Carson, 449 F.2d 345 (9th Cir. 1971); Greer v. United States, 378 F.2d 931 (5th Cir. 1967). We think the defendant has met that burden here. He has proven that his conscientious objector application was "considered" and voted on by the members of the local board at its meeting of August 26, 1970. The minutes of that meeting show that the board met for three hours. During this time period there were six personal appearances, which according to the testimony of the Executive Secretary of the board, took an average of ten minutes each. In the remaining two hours, the board considered and voted on 449 other cases including Weaver's. This averages out to 16 seconds spent by the board on each case.

However, the government contends quite correctly that we do not know the actual amount of time that was spent on Weaver's case. This may be so, but whose fault is it? Under the present regulations, the consideration was a secret proceeding where Weaver was not permitted to be present. The government's brief suggests that the local board could have spent ten minutes on the defendant and one second on 100 others. That even the easiest of cases could be decided in a second defies credibility, especially since the Executive Secretary testified that each board member reads every file, without summaries being provided. Also, the minutes indicate that an individual vote was taken on each case.

Since the defendant produced sufficient evidence tending to show that his conscientious objector claim was not properly considered, it was for the government to come forward and prove by affirmative evidence that it was. *See* United States v. Baker, 416 F.2d 202 (9th Cir. 1969). Having failed to do so, we conclude that the board violated the Selective Service regulation which requires it to receive and consider all information, and due process of law. 32 C.F.R. 1622.1(c). The 16 seconds spent on each case here is even more shocking than the 59 seconds per case spent by the appeal board in United States v. Wallen, 315 F.Supp. 459 (D.Minn.1970), which the court there condemned as being in violation of due process of law. We concur with the view expressed there that such consideration of hundreds of

cases in the space of a few hours is "almost a routine 'rubber stamp' operation." Wallen at 460.

Therefore, defendant's induction order was invalid, and he is hereby acquitted on the charge of willfully refusing induction on November 16, 1970.